UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Corey London, Jr. and Tevin Patton, both individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>A-1 Quality Logistical Solutions, LLC; William Foster, III; East Logistics, LLC; Eastern Labor, LLC; and Empire Labor Services, LLC,<br><br>Defendants. | Case No.:<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT |

## INTRODUCTION

1. Named Plaintiffs Corey London, Jr. and Tevin Patton ("Named Plaintiffs") bring a nationwide Fair Labor Standards Act ("FLSA") collective action on behalf of themselves and all other lumpers and order selectors who were improperly classified as independent contractors by Defendants A-1 Quality Logistical Solutions, LLC; William Foster, III; East Logistics, LLC; Eastern Labor, LLC; and Empire Labor Services, LLC (collectively "Defendants") and not paid overtime premium pay at the rate of time and one-half for all of their hours worked over 40 in a workweek.

2. Named Plaintiff Patton also brings a New York Labor Law Rule 23 class action brought to remedy Defendants' failure to pay overtime wages and provide adequate notice upon hiring and accurate wage statements to a class of lumpers who worked in New York State.

3. Named Plaintiffs seek unpaid overtime wages, liquidated and statutory damages, costs and attorneys' fees, service awards, as well as declaratory relief under the FLSA, 29 U.S.C. §§ 201, *et seq.* Named Plaintiff Patton and the New York class ("New York Class") also seek

1

unpaid overtime wages, liquidated and statutory damages, costs and attorneys' fees, service awards, and declaratory relief under New York Labor Law Articles 6 and 19 and their implementing regulations.

## JURISDICTION & VENUE

4. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b) of the FLSA, by 28 U.S.C. § 1331 because this action arises under laws of the United States, and by 28 U.S.C. § 1337, under Acts of Congress regulating commerce.

5. This Court has supplemental jurisdiction over the New York state claim raised by virtue of 28 U.S.C. §§ 1332 and 1367(a).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events, acts, or omissions giving rise to the claims occurred in this District and Defendants are subject to personal jurisdiction here because Defendants reside in this District.

7. Named Plaintiffs originally filed their claims in arbitration pursuant to Defendants' arbitration agreement. However, due to the recent U.S. Supreme Court decision in *Southwest Airlines Co. v. Saxon*, 142 S.Ct. 1783 (2022), Named Plaintiffs filed this complaint to pursue their claims in federal court. Concurrent with this filing, Named Plaintiffs have requested that the American Arbitration Association ("AAA") stay the arbitration proceedings. Further, Named Plaintiffs understand that Defendants have not paid their filing fee yet with AAA.

8. Named Plaintiffs represent a class of workers engaged in foreign or interstate commerce and thus not subject to arbitration under the Federal Arbitration Act.

## PARTIES

*Plaintiffs*

9. Named Plaintiff Corey London, Jr. is a resident of Georgia. His FLSA consent to sue form is attached hereto.

10. Named Plaintiff Tevin Patton is a resident of Mississippi. His FLSA consent to sue form is attached hereto.

11. Named Plaintiffs London and Patton, and the FLSA collective members whom they seek to represent ("FLSA Collective"), were classified as independent contractors, worked in Defendants' customers' warehouses as lumpers and order selectors, worked more than 40 hours in a week, and were not paid overtime premium pay at the rate of time and one-half for all hours worked over 40 in a workweek.

12. The term "Plaintiffs" as used in this complaint refers to Named Plaintiffs and any additional represented parties pursuant to the collective action provision of 29 U.S.C. § 216(b) and to such members of the class brought pursuant to Federal Rule of Civil Procedure 23, as described below, individually, collectively, or in any combination thereof.

*Defendants*

13. Defendant A-1 Quality Logistical Solutions, LLC is a for-profit Ohio corporation.

14. Defendant A-1 Quality Logistical Solutions, LLC lists its business address as 3055 Blue Rock RD, Cincinnati, OH 45239-6302.

15. Defendant William Foster, III ("Foster") is the founder and owner of A-1 Quality Logistical Solutions, LLC.

16. Upon information and believe, Foster's address is 5801 Chestnut Ridge Dr., Cincinnati, OH 45230-2500.

17. Upon information and belief, Defendants A-1 Quality Logistical Solutions, LLC and Foster created and operated numerous companies that contracted with the lumpers and order

selectors. Those companies include, but are not limited to: East Logistics, LLC; Eastern Labor, LLC; Empire Labor Services, LLC; and Western Logistics, LLC.

18. Upon information and belief, the companies identified in Paragraph 17 listed their business addresses as 3055 Blue Rock RD, Cincinnati, OH 45239-6302.

19. Upon information and belief, the companies identified in paragraph 17 are or were for-profit Ohio corporations.

20. Upon information and belief, after approximately a year, Defendants Foster and A-1 Quality Logistical Solutions, LLC dissolve the companies that they create. For example, Eastern Labor, LLC was created on approximately December 23, 2021 and then dissolved on approximately January 6, 2023. Similarly, East Logistics, LLC was created on approximately January 1, 2021 and then dissolved on December 31, 2021.

21. Most recently, on January 1, 2023, Empire Labor Services, LLC was created.

22. Upon information and belief, Defendants A-1 Quality Logistical Solutions, LLC and Foster have at all times controlled the companies identified in Paragraph 17.

23. Collectively, "A-1" refers to Defendants A-1 Quality Logistical Solutions, LLC; Foster; and the applicable company that contracted with each Plaintiff.

24. A-1 acted as an employer of Named Plaintiffs, and it continues to act as an employer of the FLSA putative collective within the meaning of 29 U.S.C. § 203(d) and under the New York Labor Law for the New York Class.

25. Upon information and belief, as founder and owner of A-1, Foster acted directly and indirectly in A-1's interest and in the interest of the other companies that contracted with Plaintiffs (i.e., East Logistics, LLC; Eastern Labor, LLC; Empire Labor Services, LLC; and Western Logistics, LLC), and he acted and continues to act directly and indirectly in its

4

interest in relation to the FLSA Collective and the New York Class. Thus, Foster is their employer within the meaning of 29 U.S.C. § 203(d).

26. Upon information and belief, Foster had authority and exercised control over the finances and operations of the various companies.

27. Upon information and belief, Foster exercised managerial authority and control over the day-to-day business of A-1, including Plaintiffs.

28. Upon information and belief, Foster decided that Plaintiffs should be classified as independent contractors and not employees, decided Plaintiffs' compensation, required Plaintiffs to sign agreements, and decided what deductions to make from Plaintiffs' wages.

29. At all times relevant herein, A-1 has been an enterprise within the meaning of 29 U.S.C. § 203(r).

30. At all times relevant herein, A-1 has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1) in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

31. Upon information and belief, A-1 operates in concert and together in a common enterprise and through related activities, as here relevant, so that the actions of one may be imputed to the other and/or so that they operate as joint employers within the meaning of the FLSA and the applicable New York wage laws.

32. Upon information and belief, A-1 is a single employer.

33. Upon information and belief, the corporate A-1 Defendants share the business address.

34. Upon information and belief, the corporate A-1 Defendants operations are interrelated because they work in unison to provide the services to A-1's corporate customers, A-1 Quality Logistical Solutions, LLC advertises job opportunities for all of the corporate A-1 Defendants, payroll is centralized, and they use the same equipment.

35. Upon information and belief, the corporate A-1 Defendants share the same management.

36. Upon information and belief, labor decisions and personnel are controlled and run by the same management personnel.

37. Upon information and belief, the corporate A-1 Defendants are controlled by Defendant Foster.

## FACTS

38. A-1 provides low-cost warehouse labor to companies across the country, including Kroger, Aldi, Penske, Frito-Lay, and PFG.

39. A-1 offers its corporate customers a wide range of warehouse labor solutions. Those service offerings include order selection, put-away, auditing and quality assurance, inventory control, and management. A-1 also offers many facility support services, such as fleet washing, painting, sanitation, janitorial services, pallet repair, and yard hostling services.

40. A-1 operates or has operated in the following states: Alabama, California, Colorado, Georgia, Indiana, Illinois, Maryland, Michigan, Missouri, New York, Ohio, South Carolina, Tennessee, Texas, and Wisconsin.

41. At all times relevant herein, A-1 has been an employer of its warehouse workforce, which include lumpers and order selectors, within the meaning of 29 U.S.C. § 203(d).

6

42. At all times relevant herein, Plaintiffs were individual employees of A-1 engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

43. Named Plaintiffs worked in A-1's customers' warehouses.

44. Named Plaintiff London was employed by A-1 as an order selector in Georgia from approximately November 2021 to January 2023.

45. Named Plaintiff Patton was employed by A-1 as an order selector in Missouri from approximately October 2021 until January 2022, in Wisconsin from approximately January 15, 2022 until January 29, 2022, and then in Missouri from approximately February 2022 until April, 2022.

46. A-1 flew Named Plaintiff Patton from Missouri to Wisconsin, then from Wisconsin back to Missouri.

47. Named Plaintiff Patton was employed by A-1 as a lumper in A-1's customer's warehouse in Tully, New York from approximately July 24, 2022 until August 12, 2022.

48. A-1 flew Named Plaintiff Patton to and from New York to work for it.

49. Generally, lumpers unload and load A-1's customers' merchandise from the trucks, break down pallets of product, create new pallets of product, and wrap the pallets in saran wrap.

50. When Named Plaintiff Patton worked for A-1 in New York, he unloaded A-1's customers' merchandise from the trucks that traveled to the warehouse from out-of-state, including from California.

51. As a lumper, Named Plaintiff Patton unloaded merchandise from assigned trucks, broke down the pallets, and created new pallets of product for A-1's customers employees to place on the warehouse shelves.

52. Order selectors move, locate, stack, and count merchandise. A-1 and its customers assign order selectors to work in specific sections of the warehouse. A-1's customer communicates to the order selector the product that it needs to ship out. The order selector then travels within the warehouse to the location where the product is located, removes the product from the warehouse shelves, places the product on a pallet jack, wraps it, and ultimately drops it off at the designated location for a lumper to place on the truck.

53. A-1's customers' products are delivered to the warehouse from other countries or even from outside the state in which Plaintiffs work. For example, when Named Plaintiff Patton worked in Missouri, A-1's customer shipped its products to California, Colorado, and Michigan.

54. A-1's customers' products, selected by order selectors and placed on the truck by the lumpers, is shipped to stores within and outside of the state in which Plaintiffs worked.

55. A-1's customers' products are delivered to the warehouses on trucks that are not owned, run, or operated by A-1.

56. Product loaded on to the trucks by lumpers, and secured by non-A-1 workers, is driven from the warehouses for distribution to retail stores or other facilities. Those retail stores or facilities are often outside of the state in which the lumpers and order selectors work.

57. Plaintiffs could not and did not run their own businesses to provide order selector or lumper work to A-1 and its customers.

58. The work that Plaintiffs performed was one of the core business functions that A-1 offered for its customers.

59. A-1 required Plaintiffs to work in A-1's customers' warehouses.

60. Plaintiffs were economically dependent on A-1.

61. Plaintiffs were required to personally perform the work that A-1 assigned to them, and they could not hire others to do it.

62. A-1 did not require Plaintiffs to have specialized skill to perform the warehouse work.

63. Plaintiffs did not invest in equipment or materials to provide the warehouse work.

64. A-1 and its customers provided all of the necessary tools for Plaintiffs' work, including pallet jacks, headsets, and saran wrap.

65. Plaintiffs worked alongside other warehouse workers who were classified as employees.

66. A-1 and its customers controlled Plaintiffs' work by scheduling their work hours, which product to select, how to wrap the product, how to label the product for shipping, which trucks to load and unload, how to break down pallets of product, how to palletize product, and where to place the product for shipment or temporary storage in the warehouse.

67. A-1 and its customers closely monitored Plaintiffs' work throughout the day through A-1's own supervisors and A-1's customers' supervisors.

68. A-1 scheduled Named Plaintiffs and other warehouse workers to work more than 40 hours a week.

69. Named Plaintiff London was regularly scheduled to work 10-hour shifts.

70. Named Plaintiff London regularly worked more than 40 hours a week (and often 50 or more hours a week).

71. A-1 scheduled Named Plaintiff Patton and other lumpers to work more than 40 hours a week.

72. Named Plaintiff Patton was regularly scheduled to work 12-hours shifts (and regularly worked 50 or more hours a week). For example, when he worked in New York, A-1 scheduled him to work from approximately 8pm to 10am, approximately six days a week. When he worked in Wisconsin, A-1 scheduled him to work from approximately 7am to 7pm,

9

six days a week. And we he worked in Missouri, A-1 scheduled him to work from approximately 12pm to 8pm, six days a week.

73. Other lumpers and order selectors worked the same or similar schedule as Named Plaintiffs.

74. A-1 failed to provide Named Plaintiff Patton and other New York Class members a wage notice as required by New York Labor Law § 195(1)(a).

75. A-1 paid order selectors, including Named Plaintiff London, based on the number of cases selected each day. For example, A-1 paid Named Plaintiff London a specific number of cents for each case he selected.

76. Sometimes A-1 alternatively paid order selectors on an hourly basis.

77. A-1 paid Named Plaintiff Patton and other lumpers on a production basis and sometimes on an hourly basis.

78. Upon information and belief, A-1 deducted business expenses from Plaintiffs' wages on each day that they worked.

79. As stated in A-1's "Liability Insurance Program," A-1 states, "$6.00 per day will be automatically deducted from your submitted invoices. This is a set cost and will not fluctuate based on the amount of services provided each day."

80. Upon information and belief, A-1 deducted this business expense for each day that Plaintiffs worked.

81. As a result of this illegal business expenses deduction, Plaintiffs did not receive all of their wages, and, under the FLSA and New York Labor Law, the business expenses must be reimbursed.

82. When A-1 paid lumpers and order selectors on a production basis it did not pay overtime wages at the rate of time and one-half for all hours worked over 40 in a workweek.

10

83. When A-1 paid lumpers and order selectors on an hourly basis, it did not pay overtime wages at the rate of time and one-half for all hours worked over 40 in a workweek.

84. For example, during the workweeks October 30, 2022 to November 5, 2022, November 6, 2022 to November 12, 2022, and November 13, 2022 to November 19, 2022, A-1 paid Named Plaintiff London $1,563.15, $1,192.50, and $1,730.40, respectively. But it did not pay him any overtime premium pay for the hours he worked over 40 in the workweek.

85. A-1 failed to pay Named Plaintiff London any premium overtime wages for hours he worked over 40 in a workweek.

86. A-1 failed to pay Named Plaintiff Patton overtime premium pay for hours worked over 40 in workweek while he worked as a lumper and order selector.

87. Plaintiffs are non-exempt employees entitled to overtime wages at the rate of time and one-half the regular rate for all hours worked over 40 in a workweek.

88. A-1's failure to pay premium overtime wages for each hour worked over 40 per week was willful.

89. In 2011, other warehouse workers who were classified as independent contractors brought FLSA unpaid overtime claims against A-1 Quality Labor Services, LLC and William J. Foster, III. The case settled on behalf of about 36 workers for $158,560.17 in back wages and liquidated damages, a $4,000 service payment to each named plaintiff, and $241,439.83 in attorneys' fees and costs. The defendants made the plaintiffs whole by paying their "full amount of the damages . . . plus full liquidated damages." *Foster et al., v. A-1 Quality Labor Services, LLC and William J. Foster, III*, 1:11 Civ. 3342-JEC, Dkt. 88 (N.D. Ga. Apr. 1, 2014) (hereinafter "Georgia lawsuit").

90. At a minimum, as a result of the Georgia lawsuit, A-1 was on notice and aware of its obligations under the FLSA to classify warehouse workers, including order selectors and lumpers, as employees and pay them at the proper rate of time and one-half for all hours worked over 40 in a workweek.

91. By creating and dissolving companies on an annual basis, A-1 has created a scheme in an attempt to avoid the mandates of the FLSA. Thus, this scheme provides further evidence of A-1's willful violation.

92. Upon information and belief, for the past six (6) years, the wage statements that A-1 provided to Plaintiffs in New York do not list the regular hours worked or the rate paid for such hours, nor did they list the accurate number of overtime hours that Plaintiffs worked.

## **COLLECTIVE ACTION ALLEGATIONS**

93. Named Plaintiffs London and Patton bring this case as a collective action consisting of:

> All warehouse laborers, including order selectors and lumpers, that A-1 classified as an independent contractor and worked within the 3 years preceding the filing of this Complaint. ("FLSA Collective" or "FLSA Collective Members").

94. A-1 is liable under the FLSA for failing to pay all the overtime wages due to Named Plaintiffs and the FLSA Collective. Named Plaintiffs and the FLSA Collective Members work or have worked for A-1, were classified as independent contractors, worked as order selectors and lumpers, and have been subjected to A-1's policy and pattern or practice of failing to pay premium overtime wages for all hours worked in excess of 40 hours per week.

95. Named Plaintiffs' claim for overtime pay is similar to the claim of other FLSA Collective Members, and their claim depends on similar factual and legal questions including, but not limited to, whether A-1 misclassified lumpers and order selectors as independent contractors as opposed to employees; whether A-1 knew or should have known that Plaintiffs worked

overtime hours; whether A-1 failed and/or refused to pay the FLSA Collective Members' premium overtime wages; and whether A-1's violations were willful.

96. There are many similarly situated employees who have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it. Those similarly situated employees are known to A-1, are readily identifiable, and can be located through A-1's records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## **NEW YORK CLASS ALLEGATIONS**

97. Named Plaintiff Patton also brings this case as a Rule 23 class action consisting of:

> All lumpers that A-1 classified as independent contractors paid on an hourly or production basis and worked in New York at any time within the 6 years preceding the filing of this Complaint. ("New York Class").

98. Upon information and belief, the New York Class is composed of more than 40 individuals. Although the precise number of such persons is not known to Named Plaintiff Patton, the facts on which the calculation of that number can be based are presently within A-1's sole control.

99. The members of the New York Class and A-1's pay practices are readily identifiable from A-1's records.

100. Excluded from the New York Class are A-1's legal representatives, officers, directors, assigns, and successors or any individual who has, or who at any time during the class period has had, a controlling interest in A-1; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New York Class.

101. The persons in the New York Class identified above are so numerous that joinder of all members is impracticable.

13

102. A-1 acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the New York Class as a whole.

103. The Second to Fourth Causes of Action are properly maintainable as class actions under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

    a. whether A-1 misclassified Named Plaintiff Patton and other members of the New York Class as independent contractors;

    b. whether Named Plaintiff Patton and the members of the New York Class were employees of A-1;

    c. whether A-1 made deductions from the wages of Named Plaintiff Patton and the members of the New York Class;

    d. whether Plaintiff Patton and other members of the New York Class worked more than 40 hours in a workweek;

    e. whether A-1 paid Named Plaintiff Patton and other members of the New York Class overtime wages at the rate of time and one-half the regular rate for all hours worked over 40 in a workweek;

    f. whether A-1 paid Named Plaintiff Patton and the New York Class for all the hours that they worked;

    g. whether Named Plaintiff Patton and the New York Class received wage statements that complied with the New York Labor Law § 195(3);

    h. whether A-1 provided Named Plaintiff Patton and the New York Class the wage notice

      as required by New York Labor Law § 195(1)(a);

    i. whether A-1 is liable for liquidated damages.

104. Named Plaintiff Patton will fairly and adequately represent and protect the interests of the New York Class. He understands that, as a class representative, he assumes a fiduciary responsibility to the New York Class to represent its interests fairly and adequately. Named Plaintiff Patton recognizes that as class representative, he must represent and consider the interests of the New York Class just as he would represent and consider his own interests. He understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the New York Class. He recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the New York Class. Named Plaintiff Patton understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing information and any relevant documentary material in his possession, and testify, if required, in a deposition and in trial.

105. Named Plaintiff Patton has retained counsel competent and experienced in complex class action employment litigation.

106. A class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant and where class members may fear retaliation by their employers. The members of the New York Class have been damaged and are entitled to recovery as a result of A-1's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the New York Class are not

de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about A-1's practices.

## FIRST CAUSE OF ACTION

(Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.:
On Behalf of Named Plaintiffs and the FLSA Collective)

107. Named Plaintiffs and other members of the FLSA Collective worked in excess of 40 hours a week but did not receive premium overtime pay for all of their overtime hours.

108. A-1's failure to pay premium overtime wages to Named Plaintiffs and the FLSA Collective for all of their hours of work in excess of 40 hours per week violated FLSA, 29 U.S.C. § 207 and its implementing regulations and caused Named Plaintiffs and the FLSA Collective injury.

109. Named Plaintiffs and other members of the FLSA Collective are entitled to relief for A-1's FLSA violation, including unpaid wages, liquidated damages, costs, and attorneys' fees pursuant to 29 U.S.C. § 216(b).

110. A-1's violation of the FLSA was willful.

## SECOND CAUSE OF ACTION

(New York Labor Law Article 6 §§ 190, *et seq.* and Article 19 §§ 650, *et seq*. and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142: On behalf of Named Plaintiff Patton and the New York Class)

111. A-1 failed to pay premium overtime wages to Named Plaintiff Patton and the New York Class Members in violation of New York Labor Law Articles 6 and 19 and their implementing regulations, including, but not limited to, 12 N.Y.C.R.R. Part 142.

112. As a result of A-1's violations of the New York Labor Law, Named Plaintiff Patton and the New York Class have suffered damages by being denied overtime wages in accordance with the New York Labor Law in amounts to be determined at trial. They are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to New York Labor Law Article 6 §§ 190, *et seq.*, Article 19 §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.

## THIRD CAUSE OF ACTION

(New York Labor Law Article 6, §§ 190, *et seq.*: On behalf of Named Plaintiff Patton and the New York Class)

113. By failing to provide wage statements that reflected the actual regular hours and the rate paid for such hours, and by failing to account for and pay for all overtime hours worked, A-1 failed to provide Named Plaintiff and the members of the New York Class accurate wage statements as required by New York Labor Law § 195(3).

114. A-1's violation of NYLL § 195(3) caused Named Plaintiff Patton and other members of the New York Class injury for which they are entitled to statutory damages in an amount to be determined at trial, plus costs and attorneys' fees, pursuant to New York Labor Law Article 6, §§ 190, *et seq*.

## FOURTH CAUSE OF ACTION

(New York Labor Law Article 6, §§ 190, *et seq.*: On behalf of Named Plaintiff Patton and the New York Class)

115. New York Labor Law § 195(1)(a) requires employers to provide their employees a notice at the time of hiring in writing in English and in the language identified by each employee as the primary language of such employee. For all employees who are not exempt from overtime, the notice must state the regular rate of pay and the overtime rate of pay. Each time

17

the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of such notice, which the employer shall preserve and maintain for six (6) years.

116. Upon information and belief, A-1 did not provide Named Plaintiff Patton and other members of the New York Class notice as required by New York Labor Law § 195(1)(a).

117. A-1 has engaged in a widespread pattern, policy, and practice of violating the New York Labor Law Article 6 requirement to provide notice upon hiring as detailed in this Class and Collective Action Complaint.

118. By reason of the foregoing, A-1 is liable to Named Plaintiff Patton and the New York Class statutory damages in an amount to be determined at trial, plus costs and attorneys' fees, pursuant to New York Labor Law Article 6, §§ 190, *et seq*.

## **RELIEF SOUGHT**

WHEREFORE, Named Plaintiffs pray for judgment against A-1 with respect to the FLSA violations as follows:

1. Recognizing this proceeding as a collective action under § 216(b) of the FLSA and ordering notice to the putative collective members at the earliest opportunity to ensure that their claims are not lost to the FLSA statute of limitations;

2. Finding A-1 liable for unpaid back wages due to Named Plaintiffs (and those other Plaintiffs who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs under the FLSA;

3. Finding that A-1 willfully violated the FLSA;

4. Awarding to Named Plaintiffs (and those other Plaintiffs who have joined in the suit) the costs of this action as provided under the FLSA;

5. Awarding to Named Plaintiffs (and those other Plaintiffs who have joined in the suit) their attorneys' fees as provided under the FLSA; and

6. Awarding to Named Plaintiffs (and those other Plaintiffs who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law.

7. Granting such other and further relief as may be necessary and appropriate.

WHEREFORE, Named Plaintiff Patton prays for judgment against A-1 with respect to the New York Class as follows:

1. Certifying this action as a class action;

2. Designating Named Plaintiff Patton as the Class Representative;

3. Declaring that the practices complained of herein are unlawful under the laws of New York;

4. Appointing the undersigned as class counsel;

5. Ordering appropriate equitable and injunctive relief to remedy A-1's violations of state law, including but not necessarily limited to an order enjoining A-1's from continuing their unlawful practices;

6. Awarding damages, liquidated damages, appropriate statutory penalties, and restitution to be paid by A-1 according to proof;

7. Awarding pre-judgment and post-judgment interest, as provided by law;

8. Ordering such other injunctive and equitable relief as the Court may deem just and proper;

9. Awarding to Named Plaintiff Patton attorneys' fees and costs of suit, including expert fees and costs; and

10. Granting such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

Dated: February 24, 2023

s/ Matthew J.P. Coffman
Matthew J.P. Coffman (0085586)
Coffman Legal, LLC
1550 Old Henderson Rd.
Suite 126
Columbus, OH 43220
Tel: (614) 949-1181
Fax: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com

Matt Dunn, Pro Hac Vice application to be filed
Getman, Sweeney & Dunn PLLC
260 Fair St.
Kingston, NY 12401
Tel: (845) 255-9370
Fax: (845)255-8649
Email: mdunn@getmansweeney.com

Attorneys for Named Plaintiffs, those similarly situated, and the Rule 23 Class
