# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| COREY LONDON, JR. et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>A-1 QUALITY LOGISTICAL SOLUTIONS, LLC, et al.,<br><br>    Defendants. | Case No. 1:23-cv-107<br><br>Judge Michael R. Barrett<br><br>**OPINION & ORDER** |

This matter is before the Court on Defendants' joint motion to compel arbitration (Doc. 41), to which Plaintiffs responded in opposition (Doc. 57) and Defendants replied (Doc. 61).  Plaintiffs (over Defendants' opposition) were granted leave to file a sur-reply. (Docs. 63, 65, 82).

    **Summary of Facts Alleged in the Amended Complaint.**  Defendants A-1 Quality Logistical Solutions, LLC, William Foster, III, East Logistics, LLC, Eastern Labor, LLC, and Empire Labor Services, LLC (collectively labeled "A-1" by Plaintiffs), are in the business of providing warehouse labor solutions to corporate clients. (Amended Complaint, Doc. 13 (¶ 43)).  A-1's warehouse workforce includes Order Selectors and Lumpers.  (*Id.* (¶ 45)).  A-1 assigned and scheduled warehouse work, and otherwise controlled all aspects of Plaintiffs' work, but nevertheless classified them as independent contractors (rather than as employees).  (*Id.* (¶¶ 66–76)).  A-1 routinely scheduled Plaintiffs to work more than forty hours a week but failed to pay any overtime wages. (*Id.* (¶¶ 77–84, 94–98)).  Sometimes A-1 paid warehouse workers on a production (rather

1

than an hourly) basis, *e.g.*, Order Selectors were paid between 13¢–16¢ per case selected. (*Id.* (¶¶ 86, 88)). No overtime wages were paid in these instances, either. (*See id.* (¶ 93)). Also, A-1 deducted an "illegal" fixed liability insurance business expense ($6.00) for each day that Plaintiffs worked. (*Id.* (¶¶ 89–92)).

Plaintiffs—current and former A-1 warehouse workers, including both Order Selectors and Lumpers—allege unlawful deductions in pay as well as minimum wage and overtime law violations at both the state and federal levels. They are pursuing a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201, *et seq.*[1], and also seek the certification of New York, Missouri, and Colorado classes pursuant to Fed. R. Civ. P. 23(b)(3)[2].

**Defendants' Joint Motion to Compel Arbitration.** Defendants East Logistics, LLC, Eastern Labor, LLC, and Empire Labor Services, LLC (referring to themselves as the "LLC Defendants") respond that Plaintiffs are independent contractors who are contractually obligated to pursue their wage-related claims (individually) through arbitration. (Doc. 41-1, PageID 681–93). The LLC Defendants ask this Court to compel arbitration (pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA")) and stay Plaintiffs' claims pending arbitration. (*Id.* PageID 693).[3] Plaintiffs respond that they are

---

[1] (Amended Complaint, Doc. 13 (¶¶ 104–107, 120–123)).

[2] (Amended Complaint, Doc. 13 (¶¶ 108–119, 124–135)).

[3] Defendants A-1 Quality Logistical Solutions, LLC and William Foster, III join in the motion; however, they deny falling within the statutory definitions of "employer" or "joint employer" as to any Plaintiff. (Doc. 41-1 PageID 675 n.1). Neither have—or had—an ownership interest in any LLC Defendant, according to the Declaration of Richard Mursinna. (Doc. 42-2 (¶¶ 3, 5)). Mursinna testifies that he is the principal owner of Empire Labor Services LLC ("Empire") and was the principal owner of East Logistics LLC ("East") and Eastern Labor LLC ("Eastern"). Both East and Eastern are now dissolved entities. (*Id.*). Empire, East, and Eastern all contracted with A-1, their client, "to broker relationships with customers in need of warehouse-related services." (*Id.* (¶ 7)).

"transportation workers" and, as such, exempt from FAA coverage. See 9 U.S.C. § 1 ("[N]othing contained herein shall apply to **contracts of employment**[4] of . . . any . . . class of workers engaged in foreign or interstate commerce.")[5] (emphasis added).

**Law & Analysis.** It is well-established that this Court is obliged to determine "whether § 1's [transportation worker] exclusion applies before ordering arbitration." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019). To this end, the Supreme Court has held that "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Sw. Airlines Co. v. Saxon*., 596 U.S. 450, 457 (2022).[6]

In *Saxon*, a ramp supervisor at Chicago Midway International Airport argued that she was not required to arbitrate an employment dispute because she was a transportation worker within the FAA exception. Southwest Airlines disagreed, arguing in part that the exception only applied to workers who "physically accompany freight across state or international boundaries." *Id.* at 461. The Supreme Court ultimately ruled in favor of the ramp supervisor, holding that she "frequently loads and unloads cargo on and off airplanes that travel in interstate commerce[]" and "therefore belongs to a 'class of workers engaged in foreign or interstate commerce' to which § 1's exemption applies."

---

[4] Both employer-employee contracts and agreements involving independent contractors fall under the § 1 definition of "contracts of employment." *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 110, 121 (2019). Thus, the Court need not address the question of whether Plaintiffs are employees or independent contractors.

[5] This exemption is also referred to as the "residual clause" of § 1. *See, e.g., Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 144 S. Ct. 905, 911, 912 (2024).

[6] Post-*Saxon* the Supreme Court clarified the "[a] transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by §1 of the Act." *Bissonnette*, 144 S. Ct. at 913. In other words, there is no "industry requirement" in the residual clause of § 1.

*Id.* at 463. But the Supreme Court cautioned that "the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." *Id.* at 457 n.2. And the Supreme Court rejected the ramp supervisor's attempt to "define the 'class of workers' as all airline employees who carry out the 'customary work' of the airline, rather than cargo loaders more specifically," because the exception does not apply to workers on an "industrywide" basis. *Id.* at 460–61.[7]

*Saxon* requires us to apply a two-part test to decide whether Plaintiffs qualify under § 1's exception: first we must define the relevant "class of workers," measured by "the actual work that the members of the class, as a whole, typically carry out"; and, second, we must determine whether that class of workers is "engaged in foreign or interstate commerce." *Id.* at 455–56.

Here, step one is straightforward. According to the Amended Complaint, Plaintiffs' proposed collective consists of "warehouse laborers, including order selectors and lumpers" who physically move product within the warehouses that A-1 services. (Doc. 13 (¶¶ 57, 59, 60, 104)).

Turning to step two, is this collective of warehouse laborers "**directly** involved in transporting goods across state or international borders[?]" See *Saxon*, 596 U.S. at 457 (emphasis added). While a close question, the Court thinks not.

According to the Amended Complaint, Order Selectors "move, locate, stack, and count merchandise[]" strictly "within the warehouse[]." (*See* Doc. 13 (¶ 60)).

> A-1 and its customers assign order selectors to work in specific sections of the warehouse. A-1's customer communicates to the

---

[7] Saxon is "a member of a 'class of workers' based on what **she** does at Southwest, **not what Southwest does generally**." 596 U.S. at 456 (emphasis added).

4

> order selector the product that it needs to ship out. **The order selector then travels within the warehouse** to the location where the product is located, removes the product from the warehouse shelves, places the product on a pallet jack, wraps it, **and ultimately drops it off at the designated location for a lumper to place on the truck**.

(*Id.* (emphasis added)).[8] Put another way, the goods that an Order Selector handles are (if you will) "tabled" in the warehouse until a *different* worker, a Lumper, places them on a truck bound (we'll assume) for interstate travel. The Lumper is presumptively akin to the ramp supervisor in *Saxon*;[9] the Order Selector—who "carries out duties **further removed** from the channels of interstate commerce"[10]— is not.[11]

---

[8] This same description is found in the declarations of the Named and Opt-in Plaintiffs. (*See, e.g.*, London Decl., Doc. 35-15 (¶ 7), Isaac Decl., Doc. 35-14 (¶ 7), Camel Decl., Doc. 35-11 (¶ 7); Conyers Decl., Doc. 35-12 (¶ 7), Gholsby Decl., Doc. 35-13 (¶ 7), Rouse Decl., Doc. 35-16 (¶ 7), Gaiter Decl., Doc. 35-18 (¶ 7); *see also* Isaac Decl., Doc. 57-5 (¶ 8) ("Physically moving product within the warehouse, including moving it to the staging area in the loading dock, was an essential part of my job. I physically moved product every day."); Rouse Decl., Doc. 57-7 (¶ 7) ("Physically moving product within the warehouse, including moving it to the staging area in the loading dock, was an essential part of my job as an order selector.") & (¶ 8) ("I physically moved product during every shift."), Gholsby Decl., Doc. 57-4 (¶ 5) ("After the product arrived from out of state locations, the product followed the following path: lumpers took charge of unloading the products directly from the trailers and placing them onto the warehouse floor. Subsequently, the lumpers organized the items by placing them in designated slots, ready for order selectors to pick and fulfill store chain orders."))

[9] *See Nair v. Medline Indus., Inc.*, No. 23-15582, 2024 WL 4144070 (9th Cir. Sept. 11, 2024) (affirming the district court's finding that an employee who stacked pallets, wrapped them in saran wrap to load onto trucks, and *loaded them every day into delivery trucks* for shipping in and outside of California was a transportation worker exempt under § 1 of the FAA).

[10] *Saxon*, 596 U.S. at 457 n.2 (emphasis added).

[11] One of the decisions upon which Defendants rely is *Lopez v. Cintas Corp.*, 47 F.4th 428, 431–32 (5th Cir. 2022), which is a "last-mile driver" or "local delivery driver" case. There, the Fifth Circuit concluded that the transportation worker exemption did not apply. *Id.* at 433 ("Once the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce."). Contrary to the Fifth Circuit's holding in *Lopez*, the undersigned reached the opposite conclusion in *Peter v. Priority Dispatch, Inc.*, 681 F. Supp. 3d 800, 802 (S.D. Ohio 2023) ("[W]hile the Supreme Court has not specifically taken up the issue of last-mile delivery drivers, this Court finds instructive the recent First and Ninth Circuits decisions holding that 'last-mile delivery workers who haul goods on final legs of interstate journeys are transportation workers "engaged in … interstate commerce," regardless of whether the workers themselves physically cross state lines.'") (citations omitted), *appeal docketed*, No. 23-3637 (6th Cir. Aug.3, 2023).

In this Court's view, the Order Selectors here are distinct from the last-mile delivery drivers in *Priority Dispatch*.

Eighty-five percent of Plaintiffs' proposed collective is made up of Order Selectors. (*See* Doc. 61 PageID 1334–35; Mursinna Decl., Doc. 61-1 PageID 1346 (¶ 3), 1348–50).[12] Their disconnect from being "actively 'engaged in transportation' of [A'1's warehouse] goods across borders" means that "the class, as a whole" is not "typically" engaged in interstate commerce. *See Saxon*, 596 U.S. at 456, 458.[13] To rule otherwise would suggest that any worker that touches goods in the stream of interstate commerce is a transportation worker. This result would overextend the shield of § 1's residual clause.

On balance, the Court concludes that § 1's exemption does not apply to this collective of A-1's warehouse laborers.[14] Plaintiffs, therefore, are subject to the FAA's enforcement provisions and must arbitrate their claims under that Act.

The Sixth Circuit has instructed that when one party requests a stay "a district court should enter a stay in the normal course[.]" *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–42 (6th Cir. 2021) (citing 9 U.S.C. § 3). And the Supreme Court

---

[12] As of July 11, 2023, there were 108 members in Plaintiffs' proposed collective, 92 of them Order Selectors. Since then, 15 more people have opted in. (*See* Docs. 62, 64, 66–77, 79). None of the consents to sue, however, specify whether the individuals are (or were) Order Selectors or Lumpers.

[13] Admittedly, this reasoning is at odds with the recent decision in *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152 (9th Cir. 2024). Like the Order Selectors here, the warehouse workers there moved product within a warehouse. *Id.* at 1161–63. Still, the Ninth Circuit found that they were transportation workers exempt from the FAA. "Though the [Supreme] Court's different formulations of the test—direct and necessary, active engagement, and intimate involvement—all vary slightly, *Saxon*'s bottom line is that to qualify as a transportation worker, an employee's relationship to the movement of goods must be sufficiently close enough to conclude that his work plays a tangible and meaningful role in their progress through the channels of interstate commerce." *Id.* at 1160. "Ortiz's job description meets all three benchmarks laid out in *Saxon*. Both Ortiz and Saxon fulfilled an admittedly small but nevertheless 'direct and necessary' role in the interstate commerce of goods: Saxon ensured that baggage would reach its final destination by taking it on and off planes, while Ortiz ensured that goods would reach their final destination by processing and storing them while they awaited further interstate transport." *Id.* at 1162.

[14] A-1 also contends that, even if § 1's exception applies, Plaintiffs can still be compelled to arbitrate their claims under the Ohio Arbitration Act (codified at Ohio Rev. Code § 2711.01, *et seq.*). (Doc. 41-1, PageID 687–93). But having found that § 1's exception does not apply, the Court expresses no view on this alternative argument.

6

has since clarified that, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see Shahid v. Cobb*, No. 1:24-cv-67, 2024 WL 3925738, at *3 (S.D. Ohio Aug. 22, 2024) (Dlott, J.). A-1 requested a stay. (Doc. 41, PageID 673; *see* Doc. 41-1, PageID 693).

**Conclusion.** Based on the foregoing, it is hereby **ORDERED** that the joint motion to compel arbitration (Doc. 41) is **GRANTED**. At Defendants' request, this civil action is **STAYED** pending arbitration.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court